UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| CITY OF LOS ANGELES, | ) | |
|---|---|---|
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. 06 C 1084 |
| | ) | Judge John W. Darrah |
| UNITED AIR LINES, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

The Bankruptcy Court action that underlies this appeal was taken by United Air Lines ("United") on September 7, 2005, and named U.S. Bank – the Trustee – as the only defendant. The City of Los Angeles (the "City") was not named. In the underlying proceeding, United sought a finding that the lien granted by the Prepaid Capital Lease Rental Credit Escrow Agreement (the "Escrow Agreement") was not a preferential transfer under 11 U.S.C. § 547 and sought to compel turnover to United of the approximately $20 million (the "Escrow Funds" or "Funds") that the City of Los Angeles deposited with U.S. Bank, as Trustee. This now comes before the Court on appeal of a January 20, 2006 order of the United States Bankruptcy Court for the Northern District of Illinois denying the City's Motion to Intervene.

## FACTS

In June 1981, the City and United entered into a terminal lease agreement (the "Terminal Lease"), which governs United's use and occupancy of certain terminals at the Los Angeles International Airport ("LAX") and which contemplated United's renovation

1

and expansion of Terminals Seven and Eight. This renovation and expansion included certain areas that would remain in the City's control. The City granted United certain credits against rent under the Terminal Lease to off-set the costs of building the areas that would remain under the City's control. The Terminal Lease called for the off-sets to be granted on a monthly basis, but the City reserved the right to prepay the rental credits through a single lump sum.

On December 7, 1982, to finance the Terminal Lease, the Regional Airport-Improvement Corporation ("RAIC"), a non-profit public benefit corporation, issued $50,750,000 in facility lease revenue bonds pursuant to, among other agreements: (a) the Partial Assignment of Terminal Facilities Lease between United and the RAIC, dated November 15, 1982 (the "Partial Assignment"); and (b) the Facilities Sublease between United and the RAIC, dated as of November 15, 1982 (the "RAIC Facilities Sublease "). Initially, the RAIC issued two series of bonds.

These RAIC Bonds are subject to an indenture, dated October 1, 1984, and entitled "Supplemental Indenture of Mortgage and Deed of Trust" ("Indenture"). Pursuant to this Indenture, the source of the payment of the RAIC Bonds is United's rental payments for facilities that have been built, and which are to be built, although it excludes rent payable under the Terminal Lease. Neither the City nor the RAIC has any obligation to make payments on the RAIC Bonds. The Bonds are purportedly secured by, *inter alia,* all rights, title, and interest of the RAIC in and to the LAX facilities, the Partial Assignment, and contingent Lease Agreement between the RAIC and the City, dated November 15, 1982 (collectively, the "LAX Leasehold Interests.")

In November 2002, and as allowed under the terms of the Terminal Lease, the City's Board of Airport Commissioners authorized the prepayment of all outstanding rental credits owed to United. To insure that the lump sum would be distributed as required by the Terminal Lease, the City, United, and U.S. Bank, as Trustee, negotiated and entered into the Escrow Agreement. The written Escrow Agreement included the grant of a lien for the benefit of the RAIC bondholders. United had no control over the Escrow Funds under the Escrow Agreement, save the limited right to direct the time and manner of payment of the Funds to the bond principal. Section 13 of the Escrow Agreement names both the City and the bondholders as third-party beneficiaries of the Escrow Agreement. The Escrow Agreement expressly limits the use of the Funds to paying down the principal (approximately $51 million) of the RAIC Bonds. The City asserts that it exercised this prepayment option as the first step in adjusting the rent under the RAIC Facilities Sublease to its fair market value. Under Amended § 11 and § 40 of the Terminal Lease, when the RAIC Bonds are repaid, the rent for the LAX Leasehold Interests are adjusted to the fair market value.[1] Pursuant to the Escrow Agreement, the City of Los Angeles deposited the Escrow Funds with U.S. Bank, as Trustee, to insure that the Funds would be paid to reduce the principal of certain municipal bonds as required by the lease of an airline terminal by the City to United.

Approximately two months after the City contributed the Escrow Funds, United filed for bankruptcy.

---

[1] The City believes the fair market value exceeds the amount that United pays; United believes that the value of the LAX Leasehold Interests is substantially less than the outstanding amount of the Bonds, rendering the Bonds undersecured to that extent.

3

On September 7, 2005, United filed a preference action, which named U.S. Bank, as Trustee and current bondholder, as the only defendant. In that proceeding, United sought to avoid the lien granted by the Escrow Agreement as a preferential transfer under 11 U.S.C. § 547 and, thereafter, to compel turnover of the Escrow Funds to United. Simply put, United seeks to: render the Escrow Agreement void, prevent the escrow from closing, and appropriate the Escrow Funds for itself.

The City learned of the underlying Bankruptcy Court action on September 13, 2005. Shortly thereafter, counsel for the City contacted United's counsel, explaining the City's interests in the Escrow Funds. This was also expressed in a letter to United on September 23, 2005, and in a telephone conference on October 3, 2005. On October 4, 2005, one of United's counsel called to say that United was not inclined to join the City as a defendant. Soon thereafter, the City filed a Motion to Intervene.

The Bankruptcy Court denied the City's Motion to Intervene after a hearing on January 20, 2006. The City now appeals the Bankruptcy Court's January 20, 2006 order.

## LEGAL STANDARD

The City's appeal presents two issues. The first is whether the Bankruptcy Court erred in denying the City's Motion to Intervene as a matter of right under Federal Rule of Civil Procedure 24(a), incorporated in the Federal Rule of Bankruptcy Procedure 7024. This is a question of law that is reviewable *de novo* by this Court or is a mixed question of law and fact, which is also reviewable *de novo*. *Nissei Sangyo America Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994). The second question is whether the Bankruptcy Court erred in denying the Motion to Intervene by permission under Federal Rule of Civil

4

Procedure 24(b), incorporated by the Federal Rule of Bankruptcy Procedure 7024. This question is reviewed for abuse of discretion. *Shea v. Angulo*, 19 F.3d at 346.

## ANALYSIS

*Intervention as a Matter of Right*

Intervention under Federal Rule of Civil Procedure 24(a), and as incorporated in the Federal Rule of Bankruptcy Procedure 7024, requires the party seeking intervention to demonstrate the following: (1) that the application for intervention is timely; (2) that the intervenor has an interest relating to the subject matter of the main action; (3) that the interest must be at least potentially impaired by the disposition of the action in its absence; and (4) that the interest may not already be adequately represented by one of the existing parties to the action. *Reid L. v. Illinois State Board of Educ.*, 289 F.3d 1009 (7th Cir. 2002). The burden is on the proposed intervenor to show that each requirement is met. *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985). "The absence of any one of these factors requires a denial of the motion for intervention." *Bankers Trust Co. of California, N.A. v. Beneficial Ill., Inc.*, 92 F.3d 1187 (7th Cir. 1996).

United concedes that the City met the first of these requirements but asserts that the City fails to meet any of the last three requirements.[2]

---

[2] As a threshold matter, United asserts that the City has waived argument on the first, second, and third prongs. United asserts that because the City's Opening Brief did not raise issues related to these prongs, they are waived. Quoting *Ajayi v. Aramark Business Services*, 336 F.3d 520, 529 (7th Cir. 2003), United asserts that the City must do more than "merely refer generally to these actions in their statement of facts; if [the appellant] intends to challenge this aspect of the [court's] ruling, [it] must identify the legal issue, raise it in the argument section of [its] brief, and support [its] argument with pertinent authority." *Id.* Likewise, the City seeks to draw the Court's attention to narrow issues raised in the fourth prong. However, while the City devoted a larger portion of its briefing materials to a discussion of the fourth prong, the City sufficiently raised these arguments in its Opening Brief. United's argument that the City waived discussion of

5

### Direct and Substantial Interest

Intervention under Rule 24(a) requires the party seeking intervention to demonstrate a direct and substantial legal interest in the action for which intervention is sought. *See Diamond v. Charles*, 476 U.S. 54, 68 (1986). Here, the City has "an interest relating to the property or transaction which is the subject of the action" as contemplated within Rule 24(a) with respect to the Escrow Funds. As Judge Wedoff noted, the City's interest is in having the Escrow Funds used to pay the bondholders.

### Denial of Intervention Would Impair or Impede Interests

The third prong of the intervention analysis requires that the intervenor "is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect [its] interest." Fed.R.Civ.P. 24(a). United asserts that the City cannot show that the disposition of the action may impair or impede the City's interest.[3] Specifically, United cites the City's Motion to Intervene, which states: "If this action proceeds without the City, the City will be unable to adequately protect its interests in the [Escrow] Fund, *absent other legal action* . . . Although the City might

---

these prongs is undermined by the fact that United, in its Response Brief, frequently cited the City's Opening Brief in its discussion of the second and third prongs. Additionally, the discussion of the adequacy of representation under 24(a)(2) implicates the findings under the second and third prongs. Federal Rule of Civil Procedure 24(a)(2) reads that a party may intervene, as a right: "when the applicant claims *an interest* relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect *that interest*, unless the *applicant's interest* is adequately represented by existing parties." Fed.R.Civ.P. 24(a)(2) (emphasis added). Further, even if the issues were not raised in the Opening Brief, the Court is still permitted to consider them. *United States v. Berkowitz*, 927 F.2d 1376 (7th Cir. 1991).

[3]   The City, in its Reply, did not address United's arguments with respect to the third prong.

bring its claims in a separate action and seek consolidation, if intervention is not granted here, that would be cumbersome and less effective than simply allowing the City to intervene." (emphasis added). Further, the City repeatedly argued before the Bankruptcy Court that judicial economy favored allowing intervention.

Federal Rule of Civil Procedure 24(a) "impairment" depends on "whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *American Nat'l Bank & Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144, 147-48 (7th Cir. 1994). Here, the City has initiated a separate action, seeking to rescind the Escrow Agreement and to obtain the Escrow Funds. As Judge Wedoff noted, the question of whether the separate actions brought by the City raise the same issues as the underlying action is better addressed in the context of a motion for consolidation rather than in the context of a motion for intervention. Thus, where, as here, intervention is sought merely as a matter of convenience, the intervention may be denied as a matter of right. *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994) (concluding that no impairment was shown where proposed intervenor could bring suit to recover his interest). On this basis alone, the Bankruptcy Court's January 20, 2006 Order is affirmed.

### Inadequate Representation

Assuming *arguendo* that the City demonstrated that denial of intervention would impede or impair its interest, the issue of inadequate representation will be considered.

The City bases its assertion that there is inadequate representation on four grounds: First, that the existing parties do not adequately represent the City's claim to the Escrow Funds, should the escrow not close. Second, that the existing parties do not

7

adequately represent the City's interest in, and cannot enforce the provisions of, the Terminal Lease because U.S. Bank is not a party to the Agreement. Third, that the parties do not adequately represent the City's interest in exercising its rights to adjust the rent under the RAIC Facilities Sublease to its fair market value. Finally, that the existing parties do not adequately represent the City's interest in the valuation of the RAIC Facilities Sublease.

The Bankruptcy Court recognized that U.S. Bank, as Trustee, adequately represents the City in the underlying action. When the party to the action has the same objective as the proposed intervenor, courts impose a more rigorous showing of inadequacy of representation. *See e.g., American Nat'l Bank & Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144, 148 (7th Cir. 1989). The City fails to show that U.S. Bank, as Trustee, is an inadequate representative of its interest. The objectives of the City and U.S. Bank, as Trustee, are aligned as to whether the lien constitutes a preference.

The City's interest in the Escrow Funds, should they be distributed, is separate from the underlying Bankruptcy Court action, which only seeks to avoid the lien granted to the bondholders on the Escrow Funds as a preference. U.S. Bank, as Trustee to the bondholders, has every reason to keep the Funds intact, keep the lien in place, enforce the Escrow Agreement, and oppose the turnover action. That the City's and U.S. Bank's interests may diverge at some later point when the bondholders and the City may be competing for the same limited pool of money is speculative and raises a collateral issue. Further, the City will have the opportunity to oppose the request should the Bankruptcy Court decide that the Escrow Funds should be turned over.

With respect to the valuation of the LAX Leasehold Interests and valuation of the RAIC Facilities Sublease, the City again has not demonstrated that U.S. Bank fails to represent its interest. The City contends that U.S. Bank, as Trustee, lacks an interest because a payment stream remains available for the payment of the RAIC Bonds regardless of the ultimate disposition of the Escrow Funds. However, U.S. Bank, as Trustee, has a clear interest in valuing the LAX Leasehold Interests as high as possible because a high valuation could defeat the turnover action by proving that the value of the LAX Leasehold Interests was more than the amount of the RAIC Bond indebtedness.

For the foregoing reasons, the Bankruptcy Court did not err in denying intervention as a matter of right.

*Intervention as a Matter of Permission*

Permissive intervention should be denied if intervention would "unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b)(2). As the City is permitted to initiate other proceedings to adequately protect its interest and, as a consequence, the rights of the City are not unduly delayed or prejudiced, the Bankruptcy Court did not abuse its discretion in denying intervention as a matter of permission.

## CONCLUSION

The January 20, 2006 Order of the United States Bankruptcy Court for the Northern District of Illinois denying the City of Los Angeles' Motion to Intervene is affirmed.

Date: 7/7/06

JOHN W. DARRAH
United States District Court Judge

9